The arguments today and the first case on today's docket is number 2022-11-001, United States v. Kyle Lamar West. You may proceed. Thank you, Your Honor, and may it please the Court. This case comes down to a gap in the record. 18 U.S.C. § 2259 requires district courts to collect relevant evidence and to make a front-end finding as to the full amount of the victim's losses. Here, the district court did neither. The record is devoid of evidence that would have allowed the district court to convert evidence of the victim's harm in this case into a specific dollar amount, and given that evidentiary dearth, the district court's acceptance of the PSR $6,000 recommendation is no finding at all as to the victim's real-world losses. What is your best case that the Court should have made a finding as to the specific amount? The best case for that, Your Honor, is Chemical and Metal Industries, and it's my best case for a few reasons. First, the statutory maximum at play in that case is effectively identical to the statutory maximum at play here. In Chemical and Metal Industries, this Court recognized that the district court could award restitution up to the full amount of the victim's losses as determined by the district court. That is parallel to the language we have here, which is in § 2259, Section B.1. In Chemical and Metal Industries, this Court recognized that that language is not self-executed. It requires the district court to collect evidence and to make findings to define the statutory maximum in any particular case. So should we remand, if we agreed with you, and allow the district court to consider all the evidence and re-sentence on the restitution issue, which could expose your client to a much, perhaps theoretically, much greater amount of restitution? I don't think so, Your Honor, and actually Chemical and Metal Industries has useful insight into that issue as well. The general rule is that when a party with the burden fails to provide evidence the first time around, they don't get a second bite at the apple. Chemical and Metal Industries recognize that there are special circumstances that might allow the party with the burden to provide additional evidence on remand, but none of those special circumstances are present here. One would be where the government's burden was unclear, but here it was not. Another would be where the trial court actually prohibited discussion or presentation of evidence on the issue. We don't have that either. And the third would be where the evidence was, for good reason, unavailable. But the evidence wasn't unavailable here. The victim's mother simply did not request restitution in the first place. And on that point, Your Honor, I would like to clarify the precise nature of the error alleged on appeal, because the nature of the error alleged informs both the merits and the appeal waiver analysis. Contrary to the government's position in the briefing, Mr. West has not merely challenged the amount of restitution ordered as incorrect, or the weight of the evidence underlying the district court's lost finding, nor could he on this record, because there is no evidence or finding to attack. And that's true for two reasons. At the outset, the $6,000 restitution award I thought you acknowledged in your briefing that there was evidence of loss here. There's evidence of harm, Your Honor. And evidence of harm is necessary for restitution, but it's not sufficient by itself. The district court also needed to develop evidence that would allow it to convert that harm into a specific dollar amount. Here, it needed evidence that would allow it to convert the mother's interest in counseling for the victim into a specific amount that would be spent on counseling in the future, reasonably projected. So this discussion is somewhat clinical. This is one of the worst crimes I've ever seen. Man sexually assaulted his own three-year-old daughter. So the PSR, or if I'm mistaken about that, the PSR said that there would be counseling for the mother's interest in counseling for the daughter, right? No, Your Honor. At record site 150, the victim's mother submitted a victim impact statement which specified that she was not requesting any restitution at that point, but she did indicate her general interest in counseling in the future. The next paragraph then goes on. Although no specific amount of restitution was requested by the child victim's mother, the next paragraph, restitution is recommended. The PSR then specifically recommended a $6,000 award based on the child victim's mother's interest in placing the victim in counseling and costs associated with that counseling. So on its own... So my question, I guess, is why can't we, the need for the restitution is evident on the PSR, so why can't we remand for there simply to be more evidence, I mean, to put a dollar figure on it? Why not? So that goes back to the special circumstances from chemical metal industries. The Court may disagree with me there. If you'd like to... Well, are you saying we're barred from doing that? I'm not saying you're barred from doing it, Your Honor. I'm just saying that the factors that this Court has previously identified as relevant to that analysis cut in Mr. West's favor. Does your client, though, understand that there have been a number of these cases that we have sent back and allowed the full rehearing on restitution, that asking for this could result in that? I mean, I'm not trying to invade your province, but do you mean to argue that, even though that carries that risk, that it could end up being much more, and I'm not foreshadowing? I understand that, Your Honor, and what I'll tell you is this. In every case where those issues are present, I do describe those risks to the client, and here we are today making that argument, nevertheless. But putting aside the recommendation not being a finding of loss on its own terms, I'd also want to note that the evidence, that there is no evidence to support that $6,000 figure. What we have instead is a reference to an inapplicable statutory minimum, and that inapplicable statutory minimum certainly has some work to do in trafficking cases, but even in that arena, it is not a substitute for evidence as to any victim's real-world losses, and it tells us nothing about the losses suffered by the victim in this case. Now, with regard to 2259 not being self-executed... Let me talk, and we are dealing with 2259, is it B-2 or B-1? B-1, Your Honor. And not the MVRA? This is a 2259-B-1 restitution order, is that correct? That's correct, Your Honor. Okay. And 2259-B-1 defines our statutory maximum as the full amount of the victim's losses, but we know 2259 is not self-executing because it doesn't give us a specific dollar amount. To get that dollar amount, the district court has to collect evidence, and then it has to go through the fact-finding procedures that are incorporated by 2059 and laid out in Section 3664. Here, the district court began that work in the Sentencing Scheduling Order at Record Site 43. It ordered the Probation Office to obtain the information sufficient to allow it to order restitution pursuant to 2259, but the information in the PSR was clearly insufficient for that purpose. 3664 gives the district court options when faced with that sort of evidentiary gap. The district court under 3664 had the opportunity to require additional documentation of loss or to hear testimony, and in order to protect the victim's privacy, it could have done so in camera. 3664 also allows the U.S. Attorney's Office or the Probation Office to point out the evidentiary gap to the district court and request more time to collect evidence. That also gives the district court an extension of up to 90 days to make a finding as to loss after imposing sentence. So the district court had a chance to do what it needed to do, is what you're saying right now? Yes, Your Honor. Is there something else that you want to, that's legally significant about that? I'm not sure I understand that question. Well, I'm trying to figure out why you're telling us that. So is it because the district court had the opportunity and could have done the homework that the district court has at that time because we have very strict rules about, given in the statute, about the restitution and also in our case law that discuss it? That's true, Your Honor, but I'm also trying to clarify the nature of the error alleged. The government is portraying the error as one of fact-finding. It's not just as an amount. It's just that there's a complete absence of any evidence. So if you were trying to do, if you had to do some sort of plain error or something, it would be, prong three, it would be zero. There couldn't be any other amount. It's not that it's 6,000 versus 8,000 or 25,000. It's that it would have to be zero because there's no evidence at all of the crime, of the amount of restitution. That's exactly right, Your Honor. Okay. On this record, the district court could... under 2259 and allow the district court to do all the analysis it needs to do. Doesn't Maturin remand in a slightly different context and doesn't Jimenez remand under 2259 on plain error and let the district court work it out rather than rendering? That's right, Your Honor. But in Winchell and Jimenez, the government's burden was unclear the first time around, given Paroline had been recently decided. So that was one of the special circumstances this court identified in chemical and metal industries that's relevant to that remedial question. And those issues weren't present in chemical and metal industries because the government's burden was clear and the statute was clear. Winchell and Paroline threw a wrinkle into that analysis, pardon me, Winchell and Jimenez threw a wrinkle into that analysis. And the same is true for Maturin, the third case you mentioned. In Maturin, this court, as part of its plain error review, determined that the defendant's offense did not include a scheme or conspiracy to defraud, which meant that the district court was circumscribed by the allegations of the indictment as to how broad it could go in terms of defining victim or compensable losses. So that case, we have the law advancing. Here we don't have to advance anything. All we have to do is look at the text of 2259B1 to identify the statutory maximum. What about our Meredith case from 2022? So in that case, our court seemed to put some stock in the fact that defendant agreed to restitution, quote, in an unspecified amount to be determined by the district court, unquote. Isn't that what your client agreed to here? No, Your Honor. He did not. And that's true for two reasons. So first, in Meredith, the parties used a plea agreement to escape the normal limits on the district court's authority to award restitution. And the terms of that plea agreement were very broad. Mr. Meredith agreed to pay for, in fact, I've got it right here, agreed to pay the full amount of losses incurred by any victim of the offense and any loss attributable by irrelevant conduct. So we're actually going, we're putting the statutes aside entirely. And that's why Meredith identified the terms of the plea agreement as the statutory maximum in this case. Here, the maximum is not defined in the plea agreement. The maximum is defined in 2259B1. So the nature of the error alleged is one way of distinguishing Meredith. But on top of that, Your Honor, in Meredith, the district court had all the evidence it needed. And we get that from note three on page 987. It describes that the PSR included a detailed schedule of the amounts owing to each victim. So going back to Judge Alrod's question earlier, is it your position that if the government had developed the evidence in the way you believe they should have, produced dollar figures for the cost of counseling, lost income, child care, et cetera, et cetera, that if the government had done it the way you believe they should have done it, that your client would have owed less than $6,000? I can't answer that question on this record, Your Honor, because we just don't have the evidence we need to answer that question. But what I will point out is that, pardon me, Your Honor, one moment, please. And that ultimately goes to the problem with the record that we have. You're right, Your Honor. If we had something, this court would be able to determine whether or not the amount the district court ended up at was reasonable. But we couldn't advance that kind of fact-bound claim anyway, given the appeal waiver. Here we have nothing, and that's the nub of the matter. That's the problem. I guess, just to back up, forgive me if you've talked about this. I'm just trying to collect my thoughts. Your client waived appeal. Yes, Your Honor.  That's right, Your Honor. And the idea is that, according to a Supreme Court case, that can be used to challenge a restitution amount that exceeds the maximum restitution amount. Is that right? That's right, Your Honor. But I think it's only specific types of claims that can be advanced. So Alfred and Meredith tell us that we can't advance fact-bound claims about the outcome of an analysis that everyone agrees should apply. What we have here is the analysis never even began in the first place, the analysis required by statute. And that's the kind of error that does survive an appeal waiver, and we know that because of chemical and metal industries. This Court encountered the same type of error, order of restitution. That's an error. I mean, I'll look at the cases, but those kind of errors are errors going to exceeding the statutory maximum. The restitution award necessarily exceeds the maximum because the District Court misinterpreted its authority in the first place to order restitution. Well, what is the statutory maximum here? In this case, the statutory maximum would have been the full amount of the victim's losses. Now, that's not self-executing. The District Court gets to determine that by collecting evidence and making a finding. Here, it did not. So the maximum is zero. Any amount of restitution necessarily exceeds the statutory maximum. And that's been in several of our... It's not just the... We follow the Supreme Court in several restitution cases dealing with these criminal restitutions, haven't we? That's right, Your Honor. That Meredith discusses pre and post-Meredith. You know, I don't mean to plow old ground here. Maybe we have. I mean, that's... I was hoping he could tell us what some of them were. Oh, go ahead. No, go ahead. You can take whatever time you need. Well, so the waiver here, I've got it in front of me. It says, the defendant waives the defendant's rights, blah, blah, blah, to appeal the conviction, sentence, fine, and order of restitution. And then it goes on to say, the defendant, however, reserves the rights to bring a direct appeal of a sentence exceeding the statutory maximum punishment, et cetera, et cetera, et cetera. And our cases in the Supreme Court, you're saying, and I'm not doubting what you're saying, but equate a sentence exceeding the statutory maximum punishment as the order of restitution. That's correct, Your Honor. I see that I'm out of time. You mind if I write it? I guess I'm just struggling with that. Maybe the cases just say all that. But the waiver itself distinguishes between a sentence and an order of restitution, and that the appeal waiver doesn't apply to the appeal of the restitution here. The appeal waiver applies to restitution, but certain claims necessarily challenge the order of restitution as exceeding one of the hard limits on the district court's authority to order restitution in the first place. All right, thank you.  On rebuttal, will you please discuss some of the cases that Judge Duncan's question says, how can this be? Can you articulate some of these cases and explain it to us? I'll try, Your Honor. Thank you. Sorry to interrupt you. I thought you were just taking that as a given. That doesn't make any sense. But anyway, I'm sure our case is clear. May it please the court, Elise Alden-Dyper on behalf of the United States. The court should dismiss this appeal because Mr. West waived his right to bring it. While he characterizes his claim as a statutory maximum claim, at base he's challenging the valuation of the losses here and the sufficiency of the evidence supporting the restitution amount. I thought he's saying there is no valuation whatsoever. He's not challenging the valuation. Isn't he challenging that there is restitution without a valuation, which is not $8 million or $20 million, not $50 million? It's actually just challenging the whole idea because there aren't any losses in this record. But there are losses. He's arguing that there's harm, but are there losses? There are losses. He's arguing that there's gaps in the record here, but there's three key things in the record here that we have to look at that show what the losses were and how the court valued those losses. You have to look at the victim impact statement. This isn't a case where there's no victim impact statement or where there's no identification of the precise harm that was caused. So you have that. Then you also combine that with the victim's mother's clear indication that she wants to receive counseling for her daughter here. Now, you don't have a valuation of how much counseling that she's seeking, but you do have direct evidence of losses that are identifiable and they're permissible under the statute. So now you have a question of how to value those losses. And the PSR filled in those gaps by placing in there a recommendation that the court use the $3,000 minimum from an analogous and related statute to dictate how much the offender in this case should be ordered to pay his victim in this case. And so it uses the district court do that? Where did the district court say, I find that the loss amount attributable to this victim is x? Where did the district court do that, either at the hearing or in the judgment? So the district court did so where it adopted the PSR. It didn't do anything additional there because there was no objection to the loss amount here. There was no objection to how the PSR valued the loss amount here. Well, the PSR didn't actually. The PSR said $3,000 or more. And then the district court, then the judgments, it says $6,000. So where do we know where the $6,000 came from? And as you were just, the district court, why shouldn't we send this back and let the district court do its work? So in the record, 151 is where the PSR discusses its recommendation. And what it says there is, the mother is interested in placing the victim in counseling and the cost associated with counseling. And then the PSR goes on to say, the mandatory minimum of $3,000 per count as set forth in B2 is recommended. Right, that's not the district court finding that. So why shouldn't we send it back and let the district court find the amount of, this is very technical. Restitution is the most technical thing that district court's judges do at sentencing. And in fact, it can bust an appeal waiver under certain circumstances. It's very technical. And the district court, why shouldn't we send it back and let the district court do its good work? We don't need to send it back here because of the standard of review. Mr. West can't satisfy the first and second prongs for the reasons we've already discussed here, which is, the court here did have a system in place of valuing the losses here. And it did come to the conclusion of $6,000. The statute here doesn't have a specific methodology that the court has to follow. The statute doesn't say, this is how you have to calculate it. You have to have receipts from past counseling to project how you quantify future counseling costs. It just says there has to be a reasonable assessment here. And that's what the court did. But the court didn't do that. The court, the PSR says that, but the court didn't do a calculation and say, this is my calculation. There's a missing step. But on the third and fourth prongs is where it comes into play that this really doesn't need to be remanded, because Mr. West has not shown a reasonable probability that the court ordered him to pay anything more than what he was accountable for, or a reasonable probability that the court would have ordered anything less than $6,000 here. $6,000 here is really the minimum of minimum amount that could be ordered in this case, given the evidence, given the clear request for, or given the clear indication that counseling was requested here. Isn't there another big error with this sentencing? That this district court cited two statutes that don't even apply and didn't cite the correct statute, and is doing this under the wrong statute? We recognize that there is a mistake in the PSR in stating that B-2 applied. It's not just the PSR. It's the district court adopting that, the wrong, complete wrong statute. Well, that's the B, the wrong portion of the statute. There is a incorrect statute listed there in the PSR that the court adopted. That's correct. But Mr. West cannot show that the court's more explicit reliance on B-1 instead of B-2 would have resulted in a lesser restitution award. The trial court was statutorily obligated under either subsection, B-1 or B-2, to order restitution for the full amount of the victim's losses here. And that includes costs that are reasonably projected to be incurred in the future. And that also encompasses counseling costs. But the sentencing hearing itself articulates no statute for which restitution would be appropriate. Do you agree with that? We agree that B-1 was not included in. Well, no, not just that. But what it does do, it does 18 U.S.C. 3663a, which would not provide for restitution here. And then it cites specifically child pornography trafficking in B-2, which is not applicable. So it cites two inapplicable statutes as the only basis for restitution. Is that correct? That's correct. That's what it says. And what was adopted by the court? And what was adopted by the court? The district court adopted two inapplicable statutes as the only basis for restitution in this case. Yes. Except B-2, as I mentioned, encompasses the first part of B-1, which is to determine the full amount of the victim's losses. So by necessity, even if it followed B-2 here, it would have actually followed B-1 as well. It's just a matter of it apportioning the harm. And this section that mentioned B-2 in the PSR did not go through an apportionment analysis like Paroline or anything like that, because it didn't have to. The B-1 analysis is encompassed in that. So there's no error there. But even if there was error, again, There's no error in not citing the correct statute in doing the rest. There's error. But there's no plain error there, because of the third and fourth prongs that you have here. So it wouldn't make a difference in this case where Mr. West cannot show a reasonable probability that this specific court would have ordered anything less than $6,000 in this case. May I ask you a question? And this is for my benefit. And also, we're at a law school. So for the benefit of the law students as well, just to set the stage of this case. I mentioned it was a terrible crime. I won't give any details. The defendant negotiated a plea agreement, cut a deal. And as part of that deal, waived his right to appeal, quote, the conviction, sentence, fine, and order of restitution. He reserved the right to bring in a direct appeal of a sentence exceeding the statutory maximum punishment. I guess for my own benefit, do you agree that despite that clear language that I just read, which is in English, the Supreme Court in our cases give this defendant the right to appeal this restitution amount and come to court and have us argue about all these highly technical legalisms about 2259, et cetera, et cetera, et cetera? We agree that there are circumstances in which there is a proper claim that a restitution order exceeds the statutory maximum. We don't agree that that is what occurred. And you agree that under Supreme Court precedent, and perhaps our own precedent, that means it's a sentence exceeding the statutory maximum punishment. That's our understanding based on the- Even though the waiver makes a distinction between sentence and order of restitution. I mean, I have to follow the Supreme Court's precedents and our own precedents if they say that. But that makes absolutely zero sense to me. I haven't looked into that specific distinguishing- It's not exactly a fair question. I'm just sort of emoting. But the other thing is this defendant, again, this is just for my benefit and the benefit of the law school, did not object to the $6,000 amount of restitution. No objection at all. That's why we're talking about plain error. Right. And that's an important distinguishing factor here is there was no objection. So the court did have this methodology or way of calculating the loss amount here. And it did so using that $3,000 minimum. And there was no objection to that. So the court didn't have an opportunity to hear any additional evidence or have any reason to doubt. So as part of that plain error analysis, you mentioned the prong three, which is what we do. When we're doing plain error, we say, OK, well, maybe there was an error and maybe it was obvious. That's what Judge Elrod was talking about with respect to the statutory subsections. But we also have to say, did this plain error affect the defendant's substantial rights? And I'd like to hear your argument again why you say this error, assuming it's plain error, did not affect the defendant's substantial rights. Sure. So the error here, to the extent there was an error, did not affect the defendant's substantial rights because he hasn't shown a reasonable probability, which is a higher standard, that the court ordered him to pay restitution in any amount greater than what the loss was that he caused to this victim or that the court would have ordered anything less but for this error. So this is analogous to the circumstances in Tijero where there were 11 victims. The court ordered between $3,000 and $11,000 to those 11 victims. But it didn't actually do a- What was the name? Why did the court order restitution to those victims in that case? To make up for what? That also was a child pornography case, but it involved possession. So you did have a paroline analysis that was necessary there under B-2. The court did not conduct that necessary analysis, but it nonetheless survived on third and fourth promise. This might not be obvious, but in a possession of child pornography case, like the one you just mentioned, what is the restitution intended to make up for? So the restitution in those cases, there's two steps there. You have, first, analyzing the total amount of loss that the victim has identified there. And then you have to apportion that loss among the individuals, multiple. Yeah, what's the nature of the loss, is what I'm asking in such a case? In those cases, it can be, it's the same types of losses that you're finding in 2259-C-2, which are applicable to our case. That's medical costs past and future, which is physical injuries, psychiatric, psychological care. That can also include lost income, physical, occupational therapy, transportation costs, child care expenses, reasonable attorney's fees. There's a lot of things at play here. And those restitution amounts can be upwards of hundreds of thousands, even above a million dollars, often in those cases, as in these cases. But we don't have a huge amount of loss here because the victim did not request a specific amount. And so the court had to determine how to use a specific amount based on the evidence available. The court used its sound discretion in doing so. And this isn't the type of case where there's hundreds of thousands requested, and then you, the second step to that being you have to apportion that harm between the multiple offenders, when it is a trafficking case, which is often a receipt or possession, something like that. Here you have the original offender, who's the only one who caused the harm to the victim here. He, so you don't have to do that second step. And that's why it's clear that there's not a reasonable probability that the court would have ordered anything less because there's nobody else here at blame. There's only this individual. And the trial court was statutorily obligated to order restitution for the full amount of the victim's losses. And those losses were identified as necessary counseling costs, which had to be, we had to get to a reasonable approximation of that. And using the $3,000 minimum from cases like Tiero and Alfred and things like that is not, it's not out of the ordinary to do that. And there's nothing telling us that we can't do that here. The statute doesn't give us a clear methodology, so the court used its discretion and assessed the cost here in a reasonable manner. And again, there was no objection to that. So for similar reasons, the fourth prong hasn't been met. There's no reason that the court should exercise its discretion here and intervene because the error did not affect the fairness and integrity of the judicial proceedings here. Now we've had some discussion about whether remand would be appropriate. And counsel opposite sided the chemical and medical industries case to suggest that remand would be inappropriate here. Do you agree with that? We do not. If the court finds that all four of the prongs have been met and that remand is necessary, the government should be permitted to present additional evidence. We understand that the general rule under chemical and metal is that additional evidence is not permissible, but this is a case that warrants special circumstances. And we've seen that applicable in cases like Jimenez. We've also seen it in cases like Jones. And the special circumstances in Jimenez, which was a child trafficking case, sorry, child pornography trafficking case. The special circumstances there were one that was noted is that the court had not yet provided specific guidance on how the government should comply with Paroline. So I think you can draw an analogy here that to the extent that the four prongs are met here for plain error, the court still hasn't given a clear methodology that the district court should have followed in this case. It hasn't said that this is the particular method that the court has to follow when assessing reasonably predicted future losses. So to the extent it is remanded and there is guidance as to how the government should prove losses like that and how the court should find losses like that, it should be permitted to present additional evidence on that process. But we've been providing that guidance for years now since Paroline. We've been providing that guidance that what you have to prove and what the district court has to find. So it's not like it's a mystery. There's guidance for the apportionment of harm. There's not guidance for how to analyze the initial losses for specifically future counseling costs. But you just prove up the person with the child would have to have counseling and for X number of years and counseling in the region where they live cost X amount. And it doesn't have to be by, you know, reasonable medical certainty or something. That's not the standard here. So it's not like proving up damages in a, you know, in some other type of case in Texas law or something. So it's a very forgiving standard, but it requires some actual numbers. Well, that's certainly one way to do it is to have an assessment of here's how many years that this particular victim over the span of her lifetime expects to expect. We do that in MVRA all the time. And MVRA has been the front leader of how to do these restitution awards because, you know, we've had lawyers specializing in that but there's been the pattern for this for years now. I haven't looked at any cases where the MVRA has particularly analyzed the future counseling costs. So I'm not familiar with that. I'd be happy to supplement the record there. But to my knowledge, there's not cases specifically analyzing the future counseling costs and what is necessary to prove that up in a case like this where it involves production of child pornography and a victim of this age. This is not necessarily an unfriendly question, but why shouldn't the district court determine in the first instance whether there are special circumstances and it should go beyond or not? Why would we determine that? Why wouldn't we let the district court send it back and say re-sentencing and then whatever the district court thinks needs to be done, either you have to stick with only what's there or not and let the district court determine in the first instance? I guess it could, but this court has found special circumstances in other cases without sending it back to the district court for that initial finding. And I think this court, it makes sense to do so because it's deciding whether the district court should hear additional evidence. Well, maybe we don't have to decide that. Maybe we just send it back for re-sentencing to be done correctly and the district court figures out what it needs to do. It's a very experienced district court with these types of issues, both as a judge and a lawyer. But your ultimate, am I correct, your ultimate ask is to dismiss this appeal, right? That's correct, I either dismiss it based on the appeal waiver because this really is a challenge to the valuation and calculation of the harm here, or alternatively affirm it on plain error. Okay. Thank you, Your Honor. Judge Elrod, Judge Duncan, I'll pick up where we left off on the appeal waiver. Restitution is a creature of statute and Congress sets a series of hard limits on a district court's authority to impose restitution in any particular case. Judge Duncan, in the Tejero opinion, only a few months ago, you recognized that one of those hard limits in a Trapkin case is sub-proximate cause analysis. So if a defendant comes forward and alleges that the district court has not engaged in Was that an appeal waiver case, I don't remember. It was, Your Honor, and you found that based on the nature of the error alleged, that the claim survived the appeal waiver, but the defendant ended up losing on plain error because he could not show that, although the district court had not engaged in a paralegal analysis on the record, the district court did find aggregate losses and then ordered the defendant to pay a much smaller amount. So we can infer from that there was some sort of analysis. The district court had not completely ignored Paroline or 22-59-2. Now with regard to Judge Duncan's questions as to the specific wording of the plea agreement. So Judge Duncan, you mentioned that first paragraph, or the first sentence in the appeal waiver talks about restitution, sentence, conviction, order of forfeiture. Well, conviction, sentence, fine, and order of restitution. Exactly right, Your Honor, and then if you go forward to that statutory maximum exception, it refers only to a sentence. So why should it include order of restitution? I know, there are probably cases that say it does, and maybe I wrote seven of them, I don't know. I was just following orders. I don't have one in my back pocket, I wish I did, Your Honor, but I will say this. That language regarding the statutory maximum is in fact irrelevant and unnecessary. This court has held in Leal and Kim that statutory maximum claims are the kind of thing you cannot waive in a plea agreement. So even if you do not expressly reserve the right to fight about whether restitution or any other portion of a sentence that exceeds statutory maximum, you still get to do that on appeal. So what is the meaning then of a waiver of appeal of the order of restitution? What meanings does that have? It's part of the negotiation for a plea deal, right? You're saying, well, okay, you're gonna give me this number of years, not this number of years, great. I'll give up my right to appeal the order of restitution. What does that mean? What meaning does that have? What I think it means is this, Your Honor, and I'm gonna pull a rule from Meredith and Alfred. It means that as long as the district court understands its authority and collects evidence and makes a finding in line with its authority under statute, you've waived the right to fight about a fact-bound claim concerning the specific amount ordered. You can't come here and say, like Judge O'Rourke was asking opposing counsel, no, it should have been 6,000, not 8,000. I couldn't do that on appeal with the appeal waiver because those kind of fact-bound claims don't implicate a hard limit on the district court's authority to award restitution in the first place. This claim does. And with that, Your Honor, I'd like to conclude the argument by briefly addressing both the third and fourth prong of plain error review. So with regard to third prong, one of the reasons I spent some time clarifying the nature of the error alleged on appeal in my initial argument is because that nature of the error, the application of plain error depends on the nature of the error alleged, right? If it is true that I'm just fighting about facts as opposing counsel says, I'm gonna lose because it's gonna be hard to show clear and obvious error. If instead the nature of the error is that the, on this record, the district court had the authority to propose zero restitution, it opposed a single dollar restitution, then I have shown an effect on my substantial rights. So, I mean, let's assume the district court made an error by referring to the particular section here. I forget what it is. Let's assume that, let's assume it's plain error. What was to, if that had been called to the district court's attention, I mean, your client, of course, didn't object. If that had been called to the district court's attention, what would prevent the district court from saying, oh, yeah, yeah, right, I shouldn't use that subsection. I should do something different and award $29,000 in restitution. So, the evidentiary gap would be there either way. The problem is the gap. The district court didn't collect the evidence. Then I take some more evidence. Oh, now I realize I have to take some more evidence, and so it's $37,000. And if it had done that, we likely would not be here today, Your Honor. But it didn't, and ultimately 2259 and 3664 put the burden on the government to prove a loss and the onus on the district court to make a finding as to loss before imposing restitution. On the fourth prong, very briefly, so this court's cases, Winchell, Maturin, Inman, Austin, recognized that there are certain types of errors that are typically going to be enough to satisfy the fourth prong of plain error review given the nature of that error. And that's true whenever the district court orders restitution without statutory authority to do so. And that's true for a couple reasons. One, the error is realized. It's on the face of the record. It's not like a guideline error where there's just the risk of unnecessary deprivation. We can look at the record and determine that the district court imposed a sentence that exceeded its statutory authority to do so. But in addition to that, there's a series of case-specific reasons here that merit reversal most particularly, and it's a point I've come back to a few times at this point, just the obviousness of the record. There needs to be something that allows the court to apply 2259 in a reasonable manner. Here there was nothing. Last, Your Honor, there are no countervailing factors in this record that would blunt the error's effect, and that has to go to the specific error alleged, the illegal restitution. I don't think this court's free to consider larger equitable concerns about the nature of the offense or the sympathetic nature of the victim. That's all I have, Your Honors. Thank you. Thank you. We appreciate the excellent arguments of both counsel in this case, and the case is submitted. Thank you.